******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

VICTOR HARRIS ET AL. *v.* CHRISTINE
NEALE ET AL.
(AC 42301)

Alvord, Moll and Beach, Js.

*Syllabus*

The plaintiffs, H, a minor, through his next friend, A, his mother, sought
to recover damages allegedly sustained as a result of the defendants'
negligence. Following certain noncompliance with discovery, the plain-
tiffs' attorney sought and was granted a withdrawal from the case.
Thereafter, A withdrew her claims. When H did not appear in court on
the date trial was set to begin, the trial court rendered a judgment of
dismissal. Subsequently, counsel appeared for H and filed a motion to
open the judgment, which the trial court denied. H appealed to this
court, claiming that the trial court abused its discretion in denying his
motion to open. *Held* that the trial court did not properly exercise its
discretion in denying H's motion to open the judgment, as H satisfied
his burden of demonstrating that he was prevented by reasonable cause
from prosecuting the action; the trial court's finding that H's negligence
prevented him from prosecuting the action was clearly erroneous, and,
to the contrary, the unique challenges H faced in the months leading
up to the dismissal of his action, including that he, as a minor, lacked
consistent familial support to enable him to prosecute his action and
his relationship with A had broken down and was undisputedly plagued
by conflict, established reasonable cause that prevented him, a minor
allegedly suffering from a major neurocognitive disorder as a result of
a traumatic brain injury, from prosecuting his action.

Argued January 22—officially released April 28, 2020

*Procedural History*

Action to recover damages for, inter alia, the defen-
dants' alleged negligence, brought to the Superior Court
in the judicial district of Fairfield, where the court,
*Bellis, J.*, granted the motion of the plaintiffs' attorney
for permission to withdraw his appearance; thereafter,
the plaintiff Andrea Hill withdrew her claims; subse-
quently, the court, *Bellis, J.*, rendered a judgment of
dismissal; thereafter, the court denied the named plain-
tiff's motion to open the judgment, and the named plain-
tiff appealed to this court. *Reversed*; *judgment directed*;
*further proceedings*.

*John C. Turner, Jr.*, for the appellant (named
plaintiff).

*Ashley A. Noel*, with whom, on the brief, was *Kevin
R. Kratzer*, for the appellees (defendants).

*Opinion*

PER CURIAM. The plaintiff Victor Harris appeals from the judgment of the trial court denying his motion to open the judgment of dismissal rendered in favor of the defendants, Christine Neale and Christopher Neale. On appeal, Harris claims that the court abused its discretion in denying his motion to open. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of Harris' appeal. On October 15, 2016, Harris' mother, Andrea Hill, acting as both Harris' next friend[1] and coplaintiff, commenced the present action against the defendants.[2] The plaintiffs, who were represented by Attorney John Cirello, alleged that Harris, who was a minor both at the time of the injury and the commencement of the action, had sustained injuries in October, 2014, while riding a dirt bike over a ramp in the defendants' backyard. Hill sought to recover medical expenses she had paid on behalf of Harris. On March 10, 2017, the court, *Kamp, J.*, approved a scheduling order, inter alia, requiring the completion of discovery by September 30, 2017, setting a pretrial conference for January 24, 2018, and scheduling trial to begin in February, 2018. Following the defendants' filing of a request to revise, the plaintiffs filed the operative complaint on March 21, 2017. In the four count operative complaint, each plaintiff alleged one count of negligence on the basis of parental liability and one count of premises liability. On April 21, 2017, the defendants filed an answer and special defenses.

On April 27, 2017, the plaintiffs sought and received a sixty day extension of time to respond to the defendants' interrogatories and requests for production dated February 17, 2017. On September 27, 2017, the defendants filed a motion to compel the deposition of Harris, arguing that they twice had been required to mark off Harris' noticed deposition because they had not received the plaintiffs' discovery responses. They represented that they had not received any subsequent dates from the plaintiffs to conduct Harris' deposition, despite having made numerous requests. The defendants represented that they had renoticed the deposition for October 17, 2017, and sought an order from the court compelling Harris to appear on that date or within thirty days of the filing of the motion to compel. On October 10, 2017, the court, *Kamp, J.*, granted the motion and ordered Harris to submit to a deposition on or before October 31, 2017, or be subject to a nonsuit on motion from the defendants.

On November 24, 2017, the defendants filed a motion for order of compliance, in which they alleged that the plaintiffs had failed to produce records critical to the evaluation and defense of the plaintiffs' claims against them. They requested, inter alia, that the court compel

the plaintiffs to comply with the defendants' standard discovery requests and, in the event that the plaintiffs failed to comply fully on or before December 6, 2017, that the court enter a judgment of nonsuit and/or dismissal. On November 30, 2017, the defendants filed a motion for nonsuit, claiming that the plaintiffs had failed to comply with two court orders, the order requiring Harris to submit to a deposition by October 31, 2017, and the order granting the plaintiffs an extension of time, through May 18, 2017, to respond to the defendants' discovery requests. With respect to the deposition, the defendants represented that it had been further delayed, first at the plaintiffs' request because Harris' father was in critical medical condition and was to be placed in a medically induced coma, and second, at the request of the plaintiffs' counsel due to his trial schedule. According to the defendants, they had renoticed Harris' deposition for November 27, 2017, and the plaintiffs failed to appear on that date. Neither the defendants' motion for order of compliance nor their motion for nonsuit was ruled on, and both were marked off by the court, *Bellis, J.*,[3] on January 16, 2018.

By motion filed on November 20 and amended on December 22, 2017, Cirello sought to withdraw his appearance on behalf of the plaintiffs on the basis that a conflict of interest had arisen with and between the plaintiffs.[4] Specifically, Cirello represented that the plaintiffs had "recently been feuding and refuse to speak or be in the same building as one another." He further stated that Harris had requested that he remove Hill as a plaintiff. He represented that the deteriorating relationship between the plaintiffs had resulted in a lack of communication between the plaintiffs and himself and had materially limited his ability to adequately represent each of their interests. Accordingly, he requested that the court withdraw his appearance on behalf of both plaintiffs and stay the proceedings for three months or other reasonable time to provide the plaintiffs with sufficient time for each to retain independent counsel. The motion was scheduled for a hearing on January 16, 2018, on which date the court granted the motion. Three days later, the defendants filed a motion for default against the plaintiffs for failure to appear, which was not ruled on by the court.

On January 23, 2018, the defendants filed a caseflow request, in which they stated that "[t]he plaintiffs are not represented at this time and a status conference has been scheduled for January 30, 2018, the defendants request that this pretrial be marked off and rescheduled for a date chosen by the court. Please note proper consent has not been given due to the plaintiffs' nonrepresentation." The court's order on the caseflow request stated: "The status conference will go forward on [January 30, 2018,] as scheduled. The case will be dismissed if the plaintiffs remain nonappearing. The pretrial is cancelled." The plaintiffs then sought to have the status

conference postponed to February 24, 2018. In support of their motion for a continuance, the plaintiffs stated: "Self-represented party kindly requests continuance to allow action to be taken on motion to open judgment regarding motion to withdraw appearance and time to procure counsel." The court denied the plaintiffs' motion for a continuance.

By motion filed January 24 and amended January 25, 2018, the plaintiffs sought to vacate the court's order permitting Cirello to withdraw his appearance. In support of their motion, the plaintiffs argued, inter alia, that neither Hill nor Harris had been served with notice of the hearing on the motion to withdraw, that Hill did not appear at the hearing because of a medical emergency, and that Harris was concerned regarding "erroneous proceedings against a minor or person of unsound mind." Also on January 24, 2018, Hill filed an appearance as a self-represented party, and the next day, Harris did the same. On January 29, 2018, Harris filed a caseflow request again seeking that the January 30, 2018 status conference be rescheduled, stating: "Victor Harris is a minor with major neurocognitive disorder due to traumatic brain injury with behavioral disturbance who filed an appearance per instruction of prior counsel in order case is not dismissed for failure to appear still on day before court, kindly request status conference to instead be scheduled once minor is represented by counsel or following ruling on motion to vacate order." On January 30, 2018, the court sua sponte entered an order that provided: "The attempted appearance and any filings filed on behalf of the minor plaintiff Victor Harris are improper and are hereby stricken, sua sponte, by the court. Only an attorney may represent him as he is a minor."

On February 13, 2018, Hill filed a caseflow request seeking to have the trial continued. In support of her request, she stated that she needed time to prepare for trial following her counsel's withdrawal in January. She also informed the court that a guardianship proceeding had been commenced that day in the Bridgeport Probate Court and represented that such matters are generally resolved in sixty days. On February 20, 2018, the court entered an order with respect to Hill's caseflow request: "This will be addressed on [February 27, 2018,] as caseflow does not have the plaintiffs' telephone numbers to schedule a status conference prior to that." On February 27, 2018, the trial was continued to May 24, 2018, to afford the plaintiffs additional time to obtain counsel, and a status conference was scheduled for April 3, 2018.[5]

On April 2, 2018, the plaintiffs filed a motion to substitute Harris' stepmother, Mildred Mutape, "as a named party" in place of Hill. In support of their motion, the plaintiffs attached a March 19, 2018 order from the Bridgeport Probate Court, which indicated, inter alia,

that Hill had consented to the appointment of a temporary custodian of Harris and that Mutape had been appointed his temporary custodian.

Also on April 2, 2018, the defendants filed a motion for nonsuit as to Hill, pursuant to Practice Book § 13-14, alleging that Hill had failed to comply with the court's order requiring Harris to submit to a deposition and its order granting the plaintiffs an extension of time to comply with the defendants' discovery requests. On April 3, 2018, Hill filed a withdrawal form indicating that she sought to withdraw from the action as a party plaintiff.[6] In an April 11, 2018 order, the court acknowledged that Hill was "no longer a party in this case by virtue of a withdrawal filed [April 3, 2018]."

On May 24, 2018, the date trial was set to begin, Harris did not appear in court. Mutape attended the proceeding, identified herself as "the recently court-appointed guardian for . . . Harris," and stated that she was seeking to intervene in the case. After the court explained that it would not address Mutape because she was not a party to the case, Mutape responded that she understood and that she only attended to prevent the case from being dismissed. After reciting the previous continuances that Harris had been afforded in order to permit him to retain counsel, the court stated: "Well, I think because the plaintiffs are nonappearing that I have no choice but to dismiss the case. Now whether— whether they ultimately retain counsel and try to file an [action pursuant to the] accidental failure of suit statute or a new lawsuit or try to revive this case, I'm not going to speak to that. But I do have no choice now since they are nonappearing. So I am going to dismiss the case." The court rendered a judgment of dismissal pursuant to Practice Book § 14-3 on the basis that "the plaintiffs are nonappearing for their second trial date."

On September 21, 2018, counsel appeared for Harris and filed a motion to open the judgment of dismissal. Harris argued reasonable cause prevented him from prosecuting the action in a timely manner, which he alleged included his serious injuries from the dirt bike accident, his father's illness, Hill's withdrawal from the case, and Cirello's withdrawal from the case. Harris maintained that his case remained viable as to liability and damages and expressed his understanding of the importance of cooperating with discovery requests, should the judgment be opened. He also requested that the court cite in Mutape, whom he stated had been appointed his temporary guardian, as his next friend. On October 4, 2018, the defendants filed an objection to the motion to open, arguing that Harris had failed to show reasonable cause for opening the judgment. On October 9, 2018, the court summarily denied the motion to open the judgment. Harris subsequently filed a motion to reargue pursuant to Practice Book § 11-12 and attached thereto an affidavit of Mutape. The

defendants filed an objection, and the court summarily denied the motion to reargue. This appeal followed.

On November 27, 2018, Harris filed a motion for articulation. On December 3, 2018, the court filed its articulation, in which it stated that the "motion to open and motion to reargue were denied by the court, given [Harris'] own negligence, and lack of good cause to open the judgment." Noting that Harris was represented by counsel from the time of the filing of the action in October, 2016 through January 16, 2018, when counsel withdrew, the court stated that Harris had failed to appear for his scheduled deposition and did not provide full and fair discovery compliance. It further explained that, following the withdrawal of Harris' counsel, "Harris was unrepresented from January 16, 2018 through September 21, 2018, which was nearly four months after the case was dismissed," and that such delay prevented the defendants from obtaining the depositions and discovery needed to defend the action. In sum, the court stated that Harris "failed to diligently pursue the case when represented by counsel, failed to comply with standard discovery, ignored court orders, refused to communicate with his attorney, and was nonappearing for his trial dates."[7]

On appeal, Harris claims that the trial court improperly denied his motion to open the judgment.[8] We agree.

"Disciplinary dismissals pursuant to Practice Book § 14-3 . . . may be set aside and the action reinstated to the docket upon the granting of a motion to open filed in accordance with Practice Book § 17-43 and [General Statutes] § 52-212." *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 429, 190 A.3d 105, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018); cf. *Pump Services Corp.* v. *Roberts*, 19 Conn. App. 213, 216, 561 A.2d 464 (1989) (concluding that "proper way" to open judgment of dismissal rendered pursuant to predecessor to Practice Book § 14-3 is to file motion to open pursuant to predecessor to Practice Book § 17-4, which parallels General Statutes § 52-212a).[9] "Practice Book § 17-43 provides in relevant part that the disciplinary dismissal of an action may be set aside within four months upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action in whole or in part existed at the time of the rendition of such judgment . . . and that the plaintiff . . . was prevented by mistake, accident or other reasonable cause from prosecuting the action. Section 52-212 contains nearly identical language. A motion to open . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Horsey*, supra, 429–30.

"The court's discretion, however, is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion

imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Citation omitted; internal quotation marks omitted.) *Multilingual Consultant Associates, LLC* v. *Ngoh*, 163 Conn. App. 725, 735, 137 A.3d 97 (2016).

We begin by noting that the court did not determine, in either its summary ruling denying the motion to open the judgment or its articulation, that Harris had failed to demonstrate the existence of a good cause of action. In support of his motion to open the judgment, Harris argued that he had alleged a viable cause of action against the defendants. Harris asserted that he was seriously injured when he fell from the dirt bike he was riding over a ramp on the defendants' property. He cited the allegations of his complaint that the ramp was dangerous and defective and that the defendants failed to supervise his biking activity and ensure his safety. Harris maintained that he suffered several injuries from the fall, including "postconcussive syndrome, cervical sprain, acute anxiety, and chronic headaches that have adversely affected his lifestyle and well-being."

Harris attached to his motion to open the judgment an October 19, 2017 letter authored by Kathryn A. McVicar, a pediatric neurologist and assistant professor of pediatrics and neurology, stating that Harris "had a traumatic neck and head injury that has caused sequelae." The letter further stated that Harris had been diagnosed with "[m]ajor neurocognitive disorder due to traumatic brain injury, with behavioral disturbance," "[u]nspecified Attention-Deficit/Hyperactivity Disorder," "[r]efractory migraine with aura," "[v]ertigo," "[c]ervical neck pain," and "[s]leep disturbance." The letter stated that Harris had "been recommended to receive inpatient services at Gaylord Specialty Healthcare, in addition to contacting the Brain Injury Alliance of Connecticut for additional service support."

In light of the foregoing, we agree with Harris that his motion to open the judgment made the required showing that a good cause of action existed, and the court understandably did not conclude to the contrary.[10] See *Bridgeport* v. *Grace Building, LLC*, 181 Conn. App. 280, 299, 186 A.3d 754 (2018). In its articulation, the court stated that it denied the motion to open "given [Harris'] own negligence, and lack of good cause to open the judgment," concluding that Harris had failed to satisfy the second prong of § 52-212 (a). Having reviewed closely the procedural record below, we conclude that the court's finding that Harris' negligence prevented him from prosecuting the action is clearly

erroneous.[11] To the contrary, the unique challenges Harris faced in the months leading up to the dismissal of his action establish reasonable cause that prevented him from prosecuting his action.

Specifically, the record reflects that Harris, a minor, lacked consistent familial support to enable him to prosecute his action. His father was reportedly critically ill and, for some period of time, comatose,[12] and his relationship with Hill, his next friend, was undisputedly plagued by conflict. The discord between Harris and Hill was described in Cirello's motion to withdraw, in which he represented that the two were "feuding" and that Harris had requested that he remove Hill as a plaintiff. Despite the breakdown in their relationship, the plaintiffs sought continuances from the court in order to obtain new counsel. Around the same time, Hill advised the court that a guardianship proceeding had been filed with respect to Harris. Mutape was appointed Harris' temporary custodian in March, 2018, and Hill withdrew from the case in April, 2018. Just before withdrawing from the action, the plaintiffs sought to have Mutape substituted for Hill, representing to the court that the Probate Court had scheduled a hearing for May 18, 2018, regarding the removal of Hill as Harris' guardian. As of May 24, 2018, when the action was dismissed, Harris, a minor, lacked a next friend and was unrepresented by counsel. The record reveals that it was these circumstances, which were largely beyond the control of Harris, a minor allegedly suffering from a major neurocognitive disorder as a result of a traumatic brain injury, that impeded his ability to diligently pursue the action.[13]

Accordingly, we conclude that Harris satisfied his burden of demonstrating that he was prevented by reasonable cause from prosecuting the action. Under the circumstances of this case, we cannot conclude that the court properly exercised its discretion in denying Harris' motion to open the judgment.

The judgment is reversed and the case is remanded with direction to grant Harris' motion to open the judgment of dismissal and for further proceedings according to law.

[1] "A next friend is a person who appears in a lawsuit to act for the benefit of . . . [a] minor plaintiff . . . . It is well established that a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented." (Citation omitted; internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 755, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004).

[2] Hill withdrew her claims on April 3, 2018, and is not a party to this appeal. We refer herein to Harris and Hill collectively as the plaintiffs and to each individually by name, where appropriate.

[3] Unless otherwise noted, all references to the trial court hereinafter are to Judge Bellis.

[4] On December 15, 2017, Harris filed a motion for a continuance of the hearing on the motion to withdraw appearance, which had been scheduled for December 18, 2017. In support of his request, Harris represented that his father was in a comatose state, there was no ongoing parent-child relationship between Hill and himself, the Department of Children and Families had opened an investigation on November 6, 2017, and a guardianship pro-

ceeding was soon to be filed in the Bridgeport Probate Court.

[5] On February 28, 2018, the defendants filed a motion for default for failure to appear as to Harris, which motion was denied on March 7, 2018.

[6] On the withdrawal form, Hill indicated that she alone sought to withdraw. The defendants then filed a motion for default for failure to appear, on the basis that Harris' attempted appearance had been stricken by the court and Hill had filed a withdrawal of her appearance. The motion was denied.

[7] On January 7, 2019, Harris, acting through Mutape as next friend, commenced a new action pursuant to the accidental failure of suit statute, General Statutes § 52-592. See *Harris* v. *Neale*, Superior Court, judicial district of Fairfield, Docket No. FBT-CV-19-6082604-S. In that action, the defendants filed a motion to strike the complaint on the basis that a plaintiff who is nonsuited may not file both an appeal from the judgment of dismissal and a new action pursuant to § 52-592. The court, *Kamp, J.*, granted the defendants' motion to strike the complaint. Following Harris' failure to file a substitute pleading, the court rendered judgment in favor of the defendants on May 20, 2019. Harris did not file an appeal from that judgment.

[8] Harris also claims that the court improperly denied his motion to reargue the court's ruling on the motion to open the judgment. Our conclusion that the court abused its discretion in denying the motion to open the judgment makes it unnecessary to address his claim with respect to the motion to reargue. Because we do not address the motion to reargue, we do not consider Mutape's affidavit attached thereto.

Moreover, we note that, because Harris filed his motion to open the judgment more than twenty days after the judgment of dismissal, our review is limited to determining whether the court abused its discretion in denying that motion and does not involve a review of the underlying judgment of dismissal. See *Langewisch* v. *New England Residential Services, Inc.*, 113 Conn. App. 290, 294, 966 A.2d 318 (2009).

[9] We recognize that there is a conflict in our case law as to whether a motion to open a judgment of dismissal rendered pursuant to Practice Book § 14-3 is governed by § 52-212 and Practice Book § 17-43 or § 52-212a and Practice Book § 17-4. We need not resolve this conflict at this time because it does not affect the outcome of our analysis. Additionally, on appeal, the parties have not addressed this conflict; rather, they rely on § 52-212 and/ or Practice Book § 17-43 in analyzing the court's denial of Harris' motion to open. Accordingly, in resolving this appeal, we presume, without concluding, that § 52-212 and Practice Book § 17-43 govern Harris' motion to open.

[10] We note that the defendants, in their objection to Harris' motion to open the judgment, did not argue that Harris had failed to make the required showing that a good cause of action existed, but, instead, argued only that Harris had failed to establish reasonable cause to open the judgment.

[11] "[I]n order to determine whether the court abused its discretion [in ruling on a motion to open], we must look to the conclusions of fact upon which the trial court predicated its ruling. . . . Those factual findings are reviewed pursuant to the clearly erroneous standard . . . ." (Citation omitted; internal quotation marks omitted.) *Bridgeport* v. *Grace Building, LLC*, supra, 181 Conn. App. 301.

Because we conclude that the court's finding that the failure to prosecute the action was attributable to Harris' own negligence is clearly erroneous, we need not reach the defendants' argument that a trial court lacks authority to set aside a judgment of nonsuit upon a finding of negligence. See *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 238–39, 543 A.2d 728 (1988) (concluding that court was within its discretion in finding plaintiffs negligent in failing to file revised complaint and respond to discovery requests, and court correctly concluded that it lacked authority to set aside judgment of nonsuit because plaintiffs failed to meet statutory requirements of § 52-212).

[12] The plaintiffs had attached to various motions, including their January 25, 2018 motion to open the court's order permitting Cirello to withdraw his appearance, an October 4, 2017 letter authored by Antonio Constantino Jr., a physician, which stated that Harris' father remained admitted at Bridgeport Hospital where he was receiving "advanced critical care therapy including, but not limited to mechanical ventilation and advanced life support."

[13] The defendants do not dispute that Harris was without counsel or next friend at the time the court dismissed the action but argue, as the trial court found, that Harris' own negligence caused his failure to pursue the action. They challenge Harris' reliance on Cirello's withdrawal, arguing that Harris had abused the discovery process, including by failing to provide full discovery responses and to appear for his deposition, before Cirello withdrew. They further suggest that Cirello's withdrawal was due to Harris' own conduct,

including his refusal to communicate with Hill. The defendants also point to the time period following the withdrawals of Cirello and Hill, emphasizing that Harris offered no explanation for the eight month delay in retaining new counsel, and stating that Mutape had become Harris' "legal guardian" in March, 2018, more than two months prior to the scheduled trial date. We disagree that the challenges faced by Harris were of his own making, such that he failed to establish that reasonable cause prevented him from prosecuting his action.

The defendants rely on *Biro* v. *Hill*, 231 Conn. 462, 650 A.2d 541 (1994), and *Kung* v. *Deng*, 135 Conn. App. 848, 43 A.3d 225 (2012) in support of their argument that the court in the present case did not abuse its discretion. We find both cases distinguishable. In *Biro* v. *Hill*, supra, 464–66, our Supreme Court affirmed the trial court's denial of a motion to set aside a judgment of nonsuit rendered on the basis of the plaintiffs' failure to respond, even partially, to discovery requests. In moving to set aside the judgment, the plaintiffs stated that they failed to comply with the three previously entered deadlines for discovery responses because they had decided to retain new counsel and they believed it would be unfair to bind new counsel with responses to discovery requests before he had the opportunity to evaluate the case. Id., 466. In *Kung* v. *Deng*, supra, 849–50, this court affirmed the trial court's denial of a motion to open a judgment of dismissal rendered on the basis of the plaintiffs' failure to comply with discovery, despite having more than two years to respond and receiving two court orders requiring them to provide the medical records requested. The plaintiffs had argued that they were not able to obtain all the requested records. Id., 850.

Both *Biro* and *Kung* involved dismissals of actions on the basis that the plaintiffs had failed to comply with discovery orders. In seeking to open the judgment, the plaintiffs in each case neither offered nor established reasonable cause preventing them from complying with the discovery orders. In contrast, the record in the present case abounds with challenges experienced by Harris that prevented him from prosecuting his action.

––––––––––––––––––––––––